UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BRANDON LATTERSON and             CIVIL ACTION NO.
JEREMY MCCRAY, Each individually and
On behalf of others similarly situated         JUDGE:

VS.                                         MAGISTRATE JUDGE
S-3 PUMP SERVICE, INC.,
MALCOLM H. SNEED, III,
DAVID HORN and TIM HORN

ORIGINAL COMPLAINT – COLLECTIVE ACTION

COME now Plaintiffs Brandon Latterson and Jeremy McCray, each individually and on behalf of all others similarly situated, by and through their attorney Pamela R. Jones of Downer, Jones, Marino & Wilhite, L.L.C., and for their Original Complaint – Collective Action against Defendants S-3 Pump Service, Inc. (hereinafter "S-3 Pump Service") , and in support thereof they do hereby state and allege as follows:

I.
INTRODUCTION

This is an action brought by Plaintiffs, each individually and on behalf of all others similarly situated, against Defendants S-3 Pump Service.

2.

Plaintiffs, both individually and on behalf of all others similarly situated, bring this action under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA"), for declaratory judgment,

monetary damages, liquidated damages, pre-judgment interest, civil penalties and costs, including reasonable attorneys' fees as a result of Defendants' commonly applied policy and practice of failing to pay Plaintiffs and all others similarly situated compensation, including the regular rate of pay for all hours worked and the applicable overtime premium when the hours worked exceeded 40 hours in the week.

II.

JURISDICTION and VENUE

3.

This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331.

Venue is proper in this district because the acts of omissions giving rise to the claims in this Complaint took place in this district and because Defendants S-3 Pump Service, Inc. maintains its principal place of business in this district, the employment and wage policies at issue were formulated there and records are maintained there.

III.

PARTIES

4.

BRANDON LATTERSON, Plaintiff

Plaintiff Brandon Latterson is a resident and citizen of Bossier Parish, Louisiana. He was employed by Defendants to work in oilfields in Louisiana and sometimes assigned to work in other states such as Texas.

5.

Brandon Latterson was employed from approximately February 2018 until August 21, 2018. He worked as a field hand.

6.

Defendants did not pay Latterson for the time Latterson was worked in the Yard prior to travel to the assigned well sites.

7.

Defendants did not pay Latterson for the full amount of time Latterson worked driving / traveling from the Shop to the well site and from one well site to another during the work day and did not pay him the full amount of overtime wages he was owed.

8.

JEREMY MCCRAY, Plaintiff

Plaintiff Jeremy McCray is a resident and citizen of Caddo Parish, Louisiana. He was employed by Defendants to work in the oilfields in Louisiana, Texas, Arkansas and Colorado.

9.

McCray was employed by Defendants from approximately mid-August 2018 until the October 2018.

10.

Defendants did not pay McCray for time spent working at the Yard prior to being dispatched to a well site.

11.

Defendants did not pay McCray for the full amount of time McCray spent traveling from the Yard to the job site and from one job site to another during the work day and did not pay him the full amount of overtime wages he was owed.

12.

S-3 PUMP SERIVCE, INC., Defendant

Defendants is S3 Pump Service, Inc., a Louisiana business corporation with its principal place of business in Shreveport, Louisiana. At all times relevant to this Complaint, S3 Pump Service was the employer of Latterson, McCray, and similarly situated individuals, within the definition of "employer" in the FLSA.

13.

Defendant S-3 Pump Service provides products and services in the oil and gas industry throughout the United States in those areas in which fracking is a viable business.

14.

Defendants has annual gross revenues exceeding $500,000.

15.

S-3 Pump Service's principal place of business is 1918 Barton Drive, Shreveport, Louisiana, 71107. It also has business locations in Dilley Texas, and does business primarily in Louisiana, Texas, Arkansas, and Colorado.

16.

Defendants was at all times relevant hereto the employer of Plaintiffs and similarly situated individuals. Defendants is and has been engaged in interstate commerce as that term is defined by the FLSA.

17.

MALCOLM H. SNEED, III, Defendant

Defendants Malcolm H. Sneed, III, "Sneed" is an individual residing in Caddo Parish, Louisiana. At all times relevant hereto Sneed was President of S-3 Pump Service and an individual who set wage and hour policy for the Defendants S-3 Pump Service. Defendants Sneed was and is an "employer" of Plaintiffs and all other similarly situated individuals, as that term is defined in the FLSA.

18.

TIM HORN, Defendant

Defendants Tim Horn is an individual residing in Caddo Parish, Louisiana. At all times relevant hereto Tim Horn was the manager of Defendants' operations in Louisiana and Colorado and in those states to which Defendants provided products and services using Louisiana individuals. Tim Horn had the authority to set wage and hour policy for S-3 Pump Service, and his exercise of that authority was the direct cause of S-3 Pump Service's failure to pay Plaintiffs and similarly situated individuals for all hours worked, including Yard work and driving / travel work. Tim Horn was, and is, an "employer" of Plaintiffs and all other similarly situated individuals, as that term is defined in the FLSA.

19.

DAVID HORN, Defendant

Defendant David Horn is an individual residing in Austin, Texas.  At all times relevant hereto David Horn was the manager of Defendant S-3 Pump's operations in Texas.  David Horn had the authority to set wage and hour policy for S-3 Pump Service and his exercise of that authority was the direct cause of S-3 Pump Service's failure to pay Plaintiffs and similarly situated individuals for all hours worked, including Yard work and driving / travel work.   David Horn had access to the electronic time sheets of Plaintiffs and similarly situated individuals and regularly accessed the entries to cut and delete work hours recorded for work at the Shop and for drive / travel work and substituting his own arbitrary estimate of drive / travel time for purposes of calculating hours worked and overtime.   His exercise of wage / hour pay authority was the direct cause of S-3 Pump Service's failure to pay Plaintiffs and similarly situated individuals for all hours work, including Yard work and driving / travel work.  David Horn was, and is, an "employer" of Plaintiffs and similarly situated individuals, as that term is defined in the FLSA.

IV.
FACTS COMMON TO ALL CLAIMS

20.

Defendant S-3 Pump Service is in the business of providing  pump down services, coil tubing pump services and testing for pre-frac analysis to oil and gas drilling and exploration customers in Louisiana, Texas, Arkansas, Colorado and other states.

21.

Defendant was sued for violations of the FLSA in 2015 for misclassifying individuals and failing to pay overtime to salaried operators, hands, and assistant operators in a federal lawsuit titled *Jason Roche, et al v. S-3 Pump Service, Inc.*, Civil Action No. 15:0268, in United States District Court for the Western District of Texas, San Antonio Division (the "Roche FLSA Lawsuit"). Following rulings adverse to Defendant in the Roche FLSA Lawsuit, Defendant ceased paying individuals on a salary plus bonus basis and began to pay them an hourly rate.

22.

After transitioning from a salary basis to an hourly rate basis of wage payment, Defendants began to separate employee time worked into two categories: "Hourly Field" and "Travel Field." Defendants pays individuals the same hourly rate for work in the "Hourly Field" category and for work in the "Travel Field" category. Defendants differentiates between the two categories of work on the basis of time-keeping.

23.

Plaintiffs were employed as hourly rate field operators and paid the same hourly rate for field work and for travel.

24.

Defendants required Plaintiffs and similarly situated individuals to use an electronic time-keeping program accessible through their cell phones.

25.

Defendants prohibited Plaintiffs and similarly situated individuals from logging in or "clocking in" travel time on the time-keeping program. Defendants has the ability to record the individuals' actual travel time but refuses to do so. Defendants refuses to permit the individuals to do so and pays on the basis of the Defendants' arbitrary estimate of travel time rather than the actual time worked.

26.

Defendant has a central location in Louisiana and a similar location in Texas which it calls the "Yard." Defendant stores its equipment at the Yards.

27.

When Plaintiffs and similarly situated individuals are summoned for work, the Defendants requires them to assemble at the Yard prior to being dispatched to a job site. Upon arrival at the Yard, Plaintiffs and similarly situated individuals received instructions, checked and loaded vehicles, conduct other pre-check duties, and prepared for the work to be performed at their assigned well sites. Defendants also required Plaintiffs and similarly situated individuals to wait at the Yard until dispatched to their assigned well sites.

28.

Defendants prohibited Plaintiffs and similarly situated individuals from "clocking in" or recording in the time-keeping program the time they actually worked at the Yard. Defendants did not record or pay Plaintiffs and similarly situated individuals for time they spent at the Yard receiving instructions, picking up and loading equipment, conducting pre-checks, preparing for

work at the well sites, performing tasks integral to the principal work duties and waiting for dispatch orders to the assigned well sites.

29.

When dispatched from the Yard, and as part of their job duties, Plaintiffs and similarly situated individuals drove or traveled in vehicles owned by Defendants from the Shop to the assigned oil well sites where they were to perform pump or testing services.

30.

Defendants prohibited Plaintiffs and similarly situated individuals from "clocking in" or recording their actual travel time from the Shop to the assigned well site.

31.

Defendants required Plaintiffs and similarly situated individuals to "clock in" and to begin recording their work time only when they reached the assigned oil well site and to clock out when they left the well site. Defendants maintained categorized this time as "Hourly Field" in the pay records.

32.

When Plaintiffs and similarly situated individuals were required to travel from one well site to another during the same work day, Defendants required them to "clock out" upon leaving a well site and to "clock in" upon arriving at the next well site. Defendants included only the time recorded at the well sites as "Hourly Field" time in the pay records.

33.

Defendants prohibited Plaintiffs and similarly situated individuals from creating or maintaining any record of the actual amount of time spent traveling from the Shop to the assigned well site and from one well site to another during the work day.

34.

When Plaintiffs and similarly situated individuals did clock in or record time at the Yard prior to travel or in travel, Defendants' Operations Managers, Tim Horn in Louisiana and David Horn in Texas, edited the time records to delete the actual recorded travel / drive time.

35.

Rather than pay Plaintiffs and similarly situated individuals on the basis of the actual amount of time spent driving or traveling from the Shop to the well site, or from one well site to another during the work day, Defendants paid a lesser amount based upon Defendants' arbitrary estimate of the travel time and designated this payment as "Travel Field" on the pay records.

36.

Defendants purposefully did not record, or permit Plaintiffs and similarly situated individuals to record, actual drive / travel time. Plaintiffs and similarly situated individuals were threatened with discipline up to and including dismissal from employment if they clocked in for travel/drive time.

37.

Defendants' arbitrary estimate of travel time reduced Plaintiffs' compensation for actual time worked because it was not based upon actual time worked and did not take into account or

calculate driving times that reflect real-road conditions the Plaintiffs and similarly situated individuals faced during travel and did not take into account innumerable other factors that affect how long a trip could take on any given day.

38.

Defendants' practice of estimating drive / travel time and paying according to Defendants' estimate rather than the actual time worked regularly resulted in wage and overtime shortages for Plaintiffs and similarly situated individuals.

39.

Plaintiffs and similarly situated individuals have detected large discrepancies between the actual amount of time they have spent traveling from the yard to the job site and from one job site to another, and the amount of time for which they are compensated under the employer's practice of estimating travel time.  Plaintiffs and similarly situated individuals have had their actual travel time cut by 12 or more hours in a work week and are not paid at all for the hour or more worked daily at the Yard prior to traveling to the well sites.  As almost every work week exceeds 40 hours, Plaintiffs and similarly situated individuals are not compensated for their regular hourly rate or the overtime premium for the travel time the employer refuses to acknowledge.

40.

Plaintiff Latterson complained that he was not compensated for being engaged to wait and for tasks performed at the Yard and that his travel time was cut,  he was informed that the employer was not going to pay him for work performed prior to leaving the Yard and that his travel time would be estimated, regardless of the actual amount of time it took to reach the job site.  Latterson

and other individuals who inquired about shortages of their travel time were cautioned not to complaint upon threat of dismissal.

41.

Plaintiff Latterson's employment was terminated August 21, 2018, by Defendant Tim Horn after Latterson renewed his objections to the Defendants' unlawful pay practices and failure to pay him for all hours worked.

V.

REPRESENTATIVE ACTION ALLEGATIONS

42.

Plaintiffs repeat and re-allege all previous paragraphs of this Original Complaint as though fully incorporated herein.

43

Latterson and McCray bring this action on behalf of themselves and other similarly situated individuals, present and former, who were and / or are affected by the actions, policies and procedures of Defendants as described herein and to recover monetary damages owed by Defendants to Plaintiffs and members of the putative collective, including hourly rate compensation for time worked, overtime compensation for overtime hours not paid, liquidated damages, costs including expert witness fees and expenses and attorneys' fees.

44.

In addition, and in the alternative, Latterson and McCray bring this action in their individual and personal capacities, separate and apart from the collective claims set forth herein.

45.

Plaintiffs bring this claim for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The Collective Classes are defined as follows:

> All former, current and future individuals employed by Defendants and paid an hourly rate who performed Field Work and Field Travel during the statutory period.

46.

The proposed Section 216 class is composed entirely of individuals who are or were field operators, field hands / assistant operators, assistant field operators employed by S-3 Pump Service on an hourly rate basis and whose pay was calculated on the basis of Field Work and Field Travel and who, during the applicable time period work / worked for Defendants and are / were denied fundamental rights under applicable federal wage and hour laws.

47.

The members of the class are so numerous that joinder of all members is impractical. While the exact number and identities of Class members are unknown at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that more than 100 putative Class members have worked For Defendants without appropriate pay, as described herein, throughout the applicable statutory period.

48.

The proposed Section 216 classes will seek recovery of monetary damages for wages and overtime premiums for time worked by the Plaintiffs and the putative class members for the Defendants and for which the Plaintiffs and putative class members were not paid.

VI.

FIRST CLAIM FOR RELIEF

Latterson and McCray:   Individual Claims for Violations of FLSA

49.

Plaintiffs incorporate herein by reference, as if set forth in full, all the preceding paragraphs of this Original Complaint.

50.

Defendants failed to maintain time records of Plaintiffs' work in the Yard and of Plaintiffs' work driving / traveling from the Yard to the well sites and from one well site to another during the work day.

51.

Defendants deprived Plaintiffs of payment of wages for all time worked and of overtime compensation for all hours worked.

52.

Defendants' conduct and practices, as described above, were willful, intentional unreasonable, arbitrary and in bad faith.

53.

By reason of the unlawful acts alleged herein, Defendants is liable to Plaintiffs for monetary damages, liquidated damages, costs, including reasonable attorneys' fees as provided by the FLSA for all violations which occurred during Plaintiffs' employment.

54.

Alternatively, should the Court find a violation of the FLSA occurred in good faith, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

VII.

SECOND CLAIM FOR RELIEF

Collective Action Claim by Plaintiffs and Similarly Situated Class Members

55.

Plaintiffs incorporate herein by reference, as if set forth in full, all the preceding paragraphs of this Original Complaint.

56.

Defendants failed to maintain time records of the work performed by Plaintiffs and similarly situated class members in the Yard and their work driving / traveling from the Yard to the well sites and from one well site to another during the work day.

57.

Defendants deprived Plaintiffs and similarly situated class members of the payment of wages for all time worked and of overtime compensation for all hours worked.

58.

Defendants' conduct and practices, as described above, were willful, intentional unreasonable, arbitrary and in bad faith.

59.

By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs and similarly situated members of the class for monetary damages, liquidated damages, costs, including reasonable attorneys' fees as provided by the FLSA for all violations which occurred during Plaintiffs' employment.

VIII.
THIRD CLAIM FOR RELIEF
Latterson: Retaliation Claim

60.

Plaintiff Brandon Latterson incorporates herein by reference as if set forth in full the previous allegations of the Original Complaint.

61.

Defendant S-3 Pump Service and employer Tim Horn retaliated against Plaintiff in violation of Section 15(a)(3) of the FLSA.

62.

Plaintiff Latterson engaged in protected conduct when he complained to his supervisor and to Tim Horn about the unlawful wage practices of arbitrary estimates of travel time, refusal to pay for work performed in the Yard / Shop prior to departure to the well site, the intentional deletion of employee time entries, and for refusal to include all hours worked for purposes of overtime pay calculations.

63.

When Plaintiff recorded his actual work time, despite the Defendants employer's prohibition against recording drive / travel time, Horn cautioned him about violating company policy and threatened discipline up to and including dismissal or future violations.

64.

When Plaintiff continued to object to the reduction of hours worked and non-payment of wages for all hours worked, Tim Horn terminated Plaintiff's employment.

65.

Defendants is liable to Plaintiff Latterson for wages and the value of lost benefits from the date of dismissal until the date Latterson obtained comparable employment, plus an equal amount in liquidated damages, costs and attorney's fees.

IX.

WILLFULNESS

Applicable to all Claims

66.

Plaintiffs repeat and re-allege all the preceding paragraphs of the Original complaint above, as if set forth inf full.

67.

All actions by Defendants were willful and not the result of mistake or inadvertence.

68.

Defendants knew or should have known that the FLSA applied to the Plaintiffs and similarly situated individuals at all relevant times.

69.

Defendants had actual knowledge of its own prior FLSA litigation and enforcement actions taken against it involving individuals working in the same job positions as the Plaintiffs and similarly situated individuals, primarily Field Operators and Field Hands.

70.

Compelled to pay overtime wages to salaried Field Operators and Field Hands, Defendants converted their pay scale to an hourly rate basis, then created and maintained a pay practice designed to reduce its overtime costs by disregarding the actual number of hours worked by Plaintiffs and similarly situated individuals and substituting Defendants' arbitrary estimate for drive / travel work and not paying at all for work performed at the Yard prior to travel to an assigned well site.

71.

Despite being on notice that the FLSA required an employer to pay its individuals wages for all time worked and an overtime premium for all hours worked over 40 hours in a week, and despite notice that employee drive / travel time from dispatch to field location and from one field location to another during the workday constituted compensable time worked, Defendants refused to maintain records of such time and refused to compensate Plaintiffs and similarly situated individuals for such work.

72.

When individuals, including Plaintiff Latterson, complained to Defendants about the unlawfulness of Defendants' manner of calculating time worked and payment policies, Defendants threatened them with disciplinary action and terminated the employment of those who made repeated objections.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Latterson and McCray, each individually and for others similarly situated, respectfully pray for declaratory relief and damages as follows:

1. That Defendants be summoned to appear and answer herein;

2. That Defendants be required to account to Plaintiffs, the class members, and the Court for all of the hours worked by Plaintiffs and the class members and all monies paid to them;

3. A declaratory judgment that Defendants S-3 Pump Service's practices alleged herein violate the FLSA, 29 U.S.C. § 201, et seq., and attendant regulations;

4. Certification of all qualifying current and former individuals, with proper notice to and opportunity for them to participate in the litigation;

5. Judgment for all unpaid wages and unpaid overtime compensation under the FLSA and attendant regulations;

6. Judgment for liquidated damages pursuant to the FLSA and attendant regulations in an amount equal to all unpaid wages and overtime compensation owed to Plaintiffs and members of the Class during the applicable statutory period;

7. An order directing Defendants to pay Plaintiffs and members of the Class prejudgment interest, reasonable attorney's fees and all costs of this action;

8. Such other and further relief as this Court may deem necessary, just and proper.

AND FURTHER that judgment be entered in favor of Plaintiff Latterson finding that Defendants retaliated against him in violation of the FLSA and awarding him back pay, front pay in lieu of reinstatement, liquidated damages, costs and attorney's fees.

PLAINTIFFS REQUEST A JURY TRIAL

*/s/ Pamela R. Jones*

Pamela R. Jones, No. 19640
Downer, Jones, Marino & Wilhite, LLC
401 Market Street, Suite 1250
Shreveport, LA  71101

318-213-4444   Telephone

318-213-4445   Facsimile

pjones@DHW-law.com